UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TERRANCE BOATWRIGHT,<br><br>Defendant. | Case No. 2:19-cr-00301-GMN-DJA<br><br>**ORDER** |

Pending before the Court is Defendant Terrance Boatwright's emergency motion for temporary release under 18 U.S.C. 3142(i) due to COVID-19 pandemic. Docket No. 51. The Court has considered Defendant's motion and the United States' response. Docket Nos. 51, 53. Defendant waived his reply. Docket No. 54. For the reasons stated below, the court DENIES Defendant's motion. Docket No. 51.

**I. BACKGROUND AND PROCEDURAL HISTORY**

On November 13, 2019, a grand jury sitting in Las Vegas, Nevada issued an indictment charging Defendant with one count of conspiracy to commit bank robbery, in violation of Title 18, United States Code, Sections 371 and 2113(a), and one count of bank robbery, in violation of Title 18, United States Code, Sections 2113(a) and 2. Docket No. 1. On November 15, 2019, Defendant made his initial appearance before this Court. Docket No. 16. The Court appointed counsel to represent Defendant and, after counsel for the United States and for Defendant said they were ready to proceed, the Court held a detention hearing. *Id.*

After hearing the representations of counsel, the Court ordered Defendant detained, as a risk of nonappearance and danger to the community, pending trial. *Id.* The Court found:

> The Court finds that the allegations in the case involve an ATM robbery at a Bank of America, where three masked people came in to the vestibule, covered so that only their eyes showed, and forcibly took approximately $160,000.00 of Bank of America money, plus

some deposits. A witness was able to observe their license plate. When pulled over, the defendants' clothes had been changed and the money was no longer in the vehicle. The cell phones that belonged to this defendant, and the other people stopped in the car, showed that they had been at that ATM at that time. Additionally, there was inconsistent information given to Pretrial Services. The defendant himself gave Pretrial Services three separate stories about where he lives. As the defendant continued to talk, his story changed. A fourth story was given by the defendant's girlfriend when Pretrial Services spoke to her. Furthermore, Pretrial Services has found that the defendant's girlfriend's residence is not a suitable place for the defendant to live and that the defendant's girlfriend is not a suitable third-party custodian. There is no information as to whether the defendant can live at his parents' residence. The defendant and his girlfriend gave inconsistent information as to how long their relationship has lasted. The defendant and his girlfriend also gave inconsistent information regarding the defendant's employment. The defendant stated he has been working for his mother at her business for a year. The defendant's girlfriend stated that the defendant was working in landscaping for a few months prior to his arrest. The defendant's criminal history dates back to the age of fourteen and includes three felonies. Some of the defendant's arrests occurred while he was on probation for other adjudications. The defendant also has an adjudication for evading arrest and detention when he was sixteen. The defendant is a documented gang member. The defendant has no financial or property ties to this or any other community. As a result, the Court finds that there are no conditions or combination of conditions that the Court could fashion at this time to reasonably assure the defendant's future appearance in Court or to protect the community against the risk of danger posed by the defendant. Accordingly, the defendant is ORDERED DETAINED pending trial.

Docket No. 30 at 3.

On December 30, 2019, Defendant filed a motion to reopen his detention hearing, asking the Court to release him to live at his mother's residence. Docket No. 39. After considering Defendant's motion, the United States' response, and Defendant's reply, Docket Nos. 39, 45, 47, the Court denied Defendant's motion. Docket No. 49. The Court found that the information presented in Defendant's motion was not new information to him and that, further, Defendant had failed to demonstrate that the information was material to the Court's determination of his risk of nonappearance and danger to the community. *Id*. at 5.

Defendant is currently housed at the Nevada Southern Detention Center ("NSDC"), operated by CoreCivic, in Pahrump, Nevada. Defendant seeks an order for temporary release from custody for what he contends are compelling reasons—namely that the health risk to Defendant is

a compelling reason to grant release. Defendant submits that he "is among the group of people the Centers for Disease Control and Prevention ("CDC") categorizes as being most-at-risk for contracting COVID-19." Docket No. 51 at 1. Defendant submits that he "has a heightened risk" of contracting COVID-19 "given the conditions" at NSDC. *Id*. at 2. *See also id*. at 10-12.

The CDC identifies certain categories of individuals at a higher risk of severe illness, including people aged 65 years and older and those with serious underlying medical conditions, such as chronic lung disease, moderate to severe asthma, serious heart conditions, severe obesity, diabetes, chronic kidney disease undergoing dialysis, liver disease, and people who are immunocompromised. *See* www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited April 1, 2020). Defendant does not submit that he falls into any of the categories identified by the CDC; rather, he bases his argument on the fact that he is detained in the NSDC. *See* Docket No. 51.

Defendant submits that his pretrial detention affects his ability to prepare his defense, because it is "unwise" for his attorney to visit him at NSDC during the pandemic. *Id*. at 12. Defendant further submits that the Bail Reform Act "requires" his temporary release because conditions have changed since he was detained. *Id*. at 15. Defendant therefore urges the Court to consider the "total harm and benefits to prisoner and society" that his pretrial detention will yield. *Id*. at 16. Defendant further submits that conditions of release can be fashioned to address his danger to the community and suggests that he be allowed to live with his mother and placed on "home confinement, location monitoring, and/or curfew." *Id*. at 17.

In response, the United States submits that Defendant's pretrial detention does not violate the Due Process Clause because it is not a form of punishment and, rather, is reasonably related to a legitimate governmental objective. Docket No. 53 at 3. Specifically, the United States submits that, at his detention hearing, the Court "had substantial reason to believe" that Defendant was a risk of nonappearance and a danger to the community, including Defendant's changing story about his residence, his girlfriend's conflicting information about his residence and employment, his criminal history, adjudication for evading arrest, supervision failures, and the fact that he was a documented gang member. *Id*. at 5. The United States submits, therefore, that Defendant's pretrial

detention does not violate the Due Process Clause of the Fifth Amendment. *Id*. at 5-6.

The United States next submits that detention does not affect his ability to prepare his defense because he is not meeting in person with his attorney. *Id*. at 6. The United States first notes that Defendant asks the Court to allow him to live with his mother in Houston, Texas, but fails to describe how he will be able to meet in person with his attorney under these circumstances. *Id*. The United States submits that, in fact, travel between Houston and Las Vegas is not practical during the pandemic and, therefore, Defendant would not have in-person meetings with his attorney if released to live with his mother. *Id*. The United States further submits that detention in NSDC does not limit Defendant's ability to prepare a defense. *Id*. Specifically, the United States submits that NSDC has several video conferencing rooms where Defendant can have private video conferences with his counsel and, further, Defendant can engage in private, non-recorded telephone calls with counsel. *Id*. Finally, the United States submits that Defendant's ability to prepare a defense is not hampered because he does not intend to present a defense, having signed a plea agreement in the instant case. *Id*. at 7.

The United States submits that, despite the severity of the COVID-19 pandemic, it does not constitute a compelling reason for Defendant's temporary release. *Id*. Specifically, the United States submits, Defendant has not demonstrated that he falls in the high risk category as identified by the CDC, that his risk of contracting COVID-19 while in custody is significantly higher than if he were release, or that NSDC is unequipped to provide appropriate medical treatment if he did become sick. *Id*. at 7-8. The United States notes that Defendant's argument that he faces a higher risk of contracting COVID-19 because he is in custody applies equally to anyone who is in custody or at a halfway house and that, it the Court "were to base [Defendant's] release upon an unverified greater risk of contracting COVID-19 while in custody, by extension, the Court would be obligated to release every detainee currently incarcerated at [NSDC]." *Id*. at 8.

The United States submits that NSDC had protocols in place prior to the pandemic to combat the spread of infectious disease. *Id*. The United States further submits that NSDC has implemented special measures to combat COVID-19. *Id*. at 9. The United States submits that NSDC has implemented screening of staff and inmates; quarantine logistics; suspension of face-

to-face legal visits; suspension of social visits; suspension of inmate movements; and the creation of isolation areas. *Id*. at 8-9. The United States further submits that, taken together, these measures "should sharply mitigate the risks of COVID-19 transmission defendant purportedly fears." *Id*. at 9. Additionally, the United States submits, as of March 30, 2020, NSDC had no reported cases of COVID-19. *Id*. at 10.

The United States notes that Defendant does not claim to be infected with COVID-19, or that he was denied necessary medical treatment for exposure to COVID-19 or any other medical condition. *Id*. The United States further notes that Defendant makes no attempt to demonstrate that NSDC is indifferent to his or any other detainee's medical needs and cannot establish that the facility would be unable to administer constitutionally appropriate treatment should he become infected with the virus. *Id*. The United States submits that COVID-19 does not impact the Court's determination that Defendant is a risk of nonappearance and a danger to the community and, further, that Defendant has failed to demonstrate that COVID-19 constitutes a compelling reason for his temporary release from custody. *Id*. at 11. Therefore, the United States asks the Court to deny Defendant's motion. *Id*.

## II. LEGAL STANDARD

"A person lawfully committed to pretrial detention has not been adjudged guilty of any crime. He had only a judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest." *Bell v. Wolfish,* 441 U.S. 520, 536-37 (1979) (internal quotations omitted). The Court may detain someone on a federal offense to ensure his presence at trial and may subject him to the restrictions and conditions of detention so long as those conditions do not constitute punishment or otherwise amount to a constitutional violation. *Id.*

The Bail Reform Act of 1984 mandates that every person charged with a federal offense be given a detention hearing. 18 U.S.C. § 3142(a). If the Court finds the defendant poses a danger to public safety or a flight risk, the Court may order the defendant detained pending trial. 18 U.S.C. § 3142(f).

Section 3142(i) permits a judicial officer to "permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial

officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." Courts have used this provision "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Hamilton*, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (citations omitted). A defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i). *United States v. Clark,* 2020 WL 1446895, at *2 (D. Kan. Mar. 25, 2020); *see also United States v. Buswell,* 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases).

Most courts addressing a motion for temporary release under § 3142(i) have done so in the context of evaluating the necessity of the defendant assisting with preparing his or her defense. *Clark,* 2020 WL 1446895, at *2; *see, e.g., United States v. Cecerle,* 2014 WL 31674, at *4 (D. Nev. Jan. 3, 2014); *United States v. Dupree,* 833 F.Supp. 2d 241, 247 (E.D.N.Y. 2011); *United States v. Jeffries,* 2011 WL 182867, at *4 (E.D.Tenn. Jan. 20, 2011); *United States v. Hazelwood,* 2011 WL 680178, at *3 (N.D. Ohio Feb. 16, 2011). Courts considering whether pretrial release is "necessary under § 3142(i) have considered: (1) time and opportunity the defendant has to prepare for the trial and to participate in his defense; (2) the complexity of the case and volume of information; and (3) expense and inconvenience associated with preparing while incarcerated. *Cecerle,* 2014 WL 31674, at *4.

Relatively little guidance exists about what qualifies as a "compelling reason" for temporary release § 3142(i). Some courts have considered a defendant's serious medical condition compelling. *See, e.g., United States v. Rebollo-Andino,* 312 Fed.App'x 346, 348 (1st Cir. 2009) (noting that defendant could seek temporary release under § 3142 for medical reasons). Courts typically grant relief under § 3142(i) only "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Hamilton,* 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020); *see e.g., United States v. Scarpa,* 815 F.Supp. 88 (E.D.N.Y. 1993) (permitting the defendant's release under the 24-hour guard of the U.S. Marshal Service at his own expense because of traumatic gunshot injury and terminal AIDS diagnosis and correctional authorities could no longer manage his medical conditions); *United States v. Cordero Caraballo,* 185 F.Supp. 2d 143, 144-47 (D.P.R. 2002) (ordering release of

defendant who sustained multiple gunshot wounds, was partially paralyzed, could not walk, lost some arm function, who required the supervision of 4-5 contracted security guards on a daily basis, where Bureau of Prisons could not provide required medical care).

**III. DISCUSSION**

The Court is mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents, particularly within the jail and prison setting. However, in that context, a defendant should not be entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation. *Clark,* 2020 WL 1446895, at *3. Instead, the court must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary. *Id.* The Court will evaluate the four following factors: (1) the original grounds for Defendant's pretrial detention; (2) the specificity of Defendant's stated COVID-19 concerns; (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to Defendant; and (4) the likelihood that Defendant's proposed release would increase COVID-19 risks to others. *Id.* The Court will not necessarily weigh these factors equally but will consider them in their entirety to determine whether a "compelling reason" exists such that temporary release is necessary in the instant case. *Id.*; § 3142(i).

**1.** *The Original Grounds for the Defendant's Pretrial Detention*

The Court first considers the original grounds for Defendant's pretrial detention. *Clark* 2020 WL 1446895, at *3.; *see also Hamilton,* 2020 WL 1323036, at *1-2 (first considering the rebuttable presumption under § 3142(e) before considering whether the COVID-19 pandemic warranted temporary release under § 3142(i)); *Bararia,* 2013 WL 1907782, at *1-2 (considering the circumstances leading to the defendant's revocation of pretrial release); *Buswell,* 2013 WL 210899, at *5 (observing that "the facts surrounding the underlying reasons for the defendant's detention are relevant to the [§ 3142(i)] analysis"). A defendant seeking temporary release under § 3142(i) has already been subject to a Court determination that his pretrial detention was warranted on the grounds that no condition or combination of conditions would reasonably assure he is not a flight risk and/or not a danger to the community. *Clark,* 2020 WL at 1446895, at *3.

Accordingly, the Court takes into consideration whether Defendant has presented such compelling reasons that effectively override or at least sufficiently counterbalance the findings that originally justified the pretrial detention order. *Id.*

In the instant case, the Court held a full detention hearing, at which Defendant was able to make all arguments in support of his request for release. Docket No. 16. After hearing the arguments from Defendant and the United States, the Court found that Defendant is a risk of nonappearance and danger to the community such that no condition or combination of conditions can be fashioned for release. *Id.* Specifically, in addition to finding that the case itself involved a forcible robbery at an ATM, the Court found that inconsistent information was given to Pretrial Services by Defendant and his girlfriend. Docket No. 30 at 3. The Court found that Defendant "gave Pretrial Services three separate stories about where he lives. As the defendant continued to talk, his story changed. A fourth story was given by the defendant's girlfriend when Pretrial Services spoke to her." *Id.* The Court further found that Pretrial Services determined that Defendant's girlfriend's residence "is not a suitable place for the defendant to live and that the defendant's girlfriend is not a suitable third-party custodian. There is no information as to whether the defendant can live at his parents' residence. The defendant and his girlfriend gave inconsistent information as to how long their relationship has lasted." *Id.* Additionally, the Court found that Defendant and his girlfriend "gave inconsistent information regarding the defendant's employment. The defendant stated he has been working for his mother at her business for a year. The defendant's girlfriend stated that the defendant was working in landscaping for a few months prior to his arrest." *Id.* Regarding Defendant's criminal history, the Court found that Defendant's "criminal history dates back to the age of fourteen and includes three felonies. Some of the defendant's arrests occurred while he was on probation for other adjudications. The defendant also has an adjudication for evading arrest and detention when he was sixteen. The defendant is a documented gang member." *Id.* Finally, the Court noted that Defendant has no financial or property ties to this or any other community. *Id.*

In reviewing the record, the parties' briefing, and the Pretrial Services report, the Court finds that the original grounds for detention were strong. *See United States v. Dodd*, 2020 WL

1547419, at *3 (D. Minn. Apr. 1, 2020). *See also United States v. Chambers*, 2020 WL 1530746, at *1 (S.D.N.Y. March 31, 2020) (Defendant is "far too great a danger to the community to justify his release").

### 2. *The Specificity of the Defendant's Stated COVID-19 Concerns*

The court next turns to Defendant's stated COVID-19 concerns. *Clark,* 2020 WL at 1446895, at *4. Despite his initial statement that he is among the group of people the CDC categorizes as being most at-risk for contracting COVID-19, Defendant raises no specific concerns in his motion. *See* Docket No. 51. *See also United States v. Sanders*, 2020 WL 1528621, at *4 (D.Kan. March 31, 2020) (defendant is not entitled to temporary release under § 3142(i) based on general and speculative fears about COVID-19); *United States v. Marte*, 2020 WL 1505565, at *1 (S.D.N.Y. March 30, 2020) (absent "any evidence that defendant has special condition making him substantially vulnerable to COVID-19, the pandemic alone, which is affecting the community in its entirety, is not a compelling reason warranting release at this point in time").

Instead, Defendant's arguments about being incarcerated are general and speculative. Defendant devotes pages of his argument to a discussion of the COVID-19 outbreak. *Id*. at 2-6. Defendant then discusses general conditions of confinement and speaks, in general, of steps other jurisdictions have taken, including releasing older and sick inmates, discouraging the incarceration of people arrested on non-violent misdemeanor charges, and expediting the plea and bail process.[1] *Id*. at 7-10, 17-19. Next, Defendant engages in a discussion of the conditions at NSDC, *id*. at 10-12, and submits that, due to the limitation on in-person attorney visits, his continued detention will "significantly affect his ability to prepare his defense." *Id*. at 12. Defendant's Fifth Amendment Due Process and Bail Reform Act arguments are similarly general and apply equally to any detainee. *Id*. at 12-16.

NSDC is taking reasonable recommended precautions, including medical staff screening new inmates for COVID-19 symptoms and risk of exposure, isolating those deemed to be high

---

[1] None of these provisions applies to Defendant, however. Defendant is 20 years old, reported his health to Pretrial Services as "good," makes no current allegations that he is sick, and is charged with the commission of two felonies, including bank robbery "by force, violence, and intimidation…" *See* Docket No. 1 at 3.

risk, and promoting other recommended hygiene habits. Docket No. 53 at 9. To date, no inmate NSDC has exhibited symptoms of COVID-19 or tested positive for COVID-19. Further, among other precautions, NSDC is sanitizing all areas within the facility multiple times per day; all guards are wearing a pouch containing hand sanitizer; CDC COVID-19 guidance posters are posted throughout the facility; each inmate is given his/her own personal bar of soap, which will be replaced if the inmate loses or uses it; a TeleDoc-type system is in place to allow medical staff to conduct face-to-face video discussions with inmates; all cells in the facility can be transitioned into negative pressure cells; and the facility has set up a CDC high risk dorm, which is spacious and allows for spacing between occupied bunks. NSDC also changed visitation policies to suspend social visits and in-person legal visits.[2] Docket No. 53 at 9-10. The Court therefore finds Defendant's concerns about NSDC to be unsupported.

In sum, Defendant submits no specific COVID-19 risk; rather, his arguments are too speculative or generalized to favor release. *See Sanders*, 2020 WL 1528621, at *5 (motion for temporary release denied where defendant asserted no specific personal health risk factor). Further, Defendant cannot predict the extent to which COVID-19 cases might arise at NSDC any more he can predict the extent to which he may be exposed to the virus if allowed to travel to and live in Houston, or any more than many Americans can predict how they might be exposed to the virus. Defendant also cannot predict how NSDC might respond to an outbreak any more accurately than many Americans can predict how their local hospitals might respond. While inmates may not be able to fully adhere to optimal social distancing guidelines, these circumstances are generalized to all individuals in the prison system and are not unique to Defendant. The Court, however, the Court "cannot release every detainee at risk of contracting COVID-19 because the Court would then be obligated to release every detainee." *United States v. Fitzgerald*, 2020 WL 1433932, at *2 (D.Nev. March 24, 2020); *see also United States v. Munguia*, 2020 WL 1471741,

---

[2] The Court finds Defendant's argument that he cannot assist with his defense without in-person legal visits unpersuasive, particularly since he is allowed video and telephonic conferences with his attorney and his release plan involves moving hundreds of miles away from his attorney, which would necessarily not allow in-person legal visits. *See Dodd*, 2020 WL 1547419 at *3 ("Defendant does not suggest that his situation with regard to consultation with counsel is an urgent one or distinguishable from that facing other pretrial detainees at this time").

at *4 (N.D.Tex. March 26, 2020) (same). The Court finds that Defendant is detained at a facility that has implemented meaningful measures to try to minimize the likelihood of the virus entering the facility.

### 3. *The Extent to Which the Proposed Release Plan is Tailored to Mitigate or Exacerbate the Defendant's Overall COVID-19 Risks*

The Bail Reform Act allows for temporary release only if the Court determines such release is "necessary" for a compelling reason. 18 U.S.C. § 3142(i). In the context of COVID-19, this means the proposed temporary release plan should be tailored to mitigate Defendant's overall COVID-19 risks, not exacerbate them. *Clark,* 2020 WL at 1446895, at *6. Thus, the Court evaluates the extent to which Defendant's proposed release plan is tailored to mitigate or exacerbate the Defendant's overall COVID-19 risks. *Id.*

Defendant's proposed release plan consists solely of the following:

> Mr. Boatwright has a residence to return to, even if temporary. [ECF 39]. Mr. Boatwright could be placed on home confinement, location monitoring, and/or curfew to ensure that his movements are limited and supervised as needed. Mr. Boatwright's codefendants were both previously released so the charges in the Criminal Indictment, though extremely serious, should not be an impediment to fashioning conditions of his release.[3]

Docket No. 51 at 17.

Defendant's plan does not address all – or even any - aspects of public health officials' recommendations and does not address other risk factors that would arise if Defendant were released from custody. *Clark,* 2020 WL at 1446895, at *6. Defendant has not set forth a record establishing that, even if someone at NSDC were to contract COVID-19, NSDC is unprepared to contain the virus or care for those who may become infected. To the contrary, the Court is convinced that NSDC has established a comprehensive plan to manage the facility during the

---

[3] At the same time, Defendant accurately submits that, "[d]ue to the crucial interests involved, a 'case-by-case' approach is required at any stage of the case in assessing the propriety of pretrial detention." The Court agrees that its determination is to be made on an individualized basis, considering the specific characteristics and background of *this* defendant. Accordingly, the Court finds that the pretrial release status of his co-defendants, who may have very different personal circumstances, criminal histories, and backgrounds than this defendant, is completely irrelevant to the Court's determination of the propriety of pretrial release regarding Mr. Boatwright.

pandemic. The record is void of information suggesting NSDC would be unable to render appropriate medical treatment to Defendant if he became ill. Thus, the Court finds that Defendant's unexplained, conclusory allegations regarding NSDC's inability to manage the care of inmates during the pandemic does not rise to the level of justifying temporary release based on COVID-19 concerns.

Further, Defendant does not address the extent to which his risks could be exacerbated if the Court releases him to live with his mother, as he proposes. *See* Docket No. 51. Defendant offers no evidence to explain how the proposed living situation mitigates the risk of infection. For example, Defendant fails to explain who else has or will live in or frequent the home or identify any screening practice or concrete COVID-19 precautions taken there. Defendant therefore offers nothing more than mere speculation that home detention would be less risky than detention at NSDC, which has screening practices and other reasonable COVID-19 precautions in place.

Defendant also fails to address the risk of exposure while *en route* from NSDC in Nevada to his mother's residence in Texas. Defendant does not address, once there, the capacity of Houston's health care system to provide him with adequate treatment if Defendant were to contract the virus. In contrast, if Defendant remains at NSDC, he has access to medical care should he become ill. NSDC has ample motivation to prevent any outbreak and, even if an outbreak occurs, to contain and manage it for the well-being of all involved.

### 4. *The Likelihood that Defendant's Proposed Release Plan Would Increase COVID-19 Risks to Others*

In considering temporary release under § 3142(i) based on circumstances related to COVID-19, it is also appropriate for the Court to consider the likelihood the defendant's proposed release plan would increase COVID-19 risks to others, particularly if the defendant is likely to violate conditions of release, as Defendant has in the past. *See Clark,* 2020 WL at 1446895, at *7. A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, Pretrial Services officers who come into contact with Defendant for supervision, and others if Defendant is taken back into custody. *Id.*

In this case, the Court finds that these considerations do not support release. This Court originally detained Defendant because it found that he was a risk of nonappearance and a danger to the community. Docket No. 30. Given the § 3142(f) and (g) considerations discussed previously, the Court believes Defendant will likely violate any conditions of release it may impose if it were to issue a temporary release order.

As another Court recently observed, "[w]hile the location monitoring that [defendant] proposed may offer useful information about where he is, it provides little useful information about what he is doing." *United States v. Martin,* 2020 WL 1274857, at *4 (D.Md March 17, 2020). Here, Defendant has been unable or unwilling to remain law-abiding in the past, even while he was on probation. The Court has no reason to believe he would suddenly become compliant now.

Furthermore, supervising a high-risk offender out in the community will place Pretrial Services officers at a heightened risk of contracting the virus. "[L]ocation monitoring is not a limitless resource, nor is its installation and monitoring by the United States Pretrial Services officers without risk to those personnel (who must be trained and certified to install location monitoring) given current recommendations regarding implementation of social distancing." *Id.*

## IV. CONCLUSION

Defendant has not established compelling reasons sufficient to persuade the Court that temporary release is necessary. None of the factors that the Court must consider weighs in Defendant's favor. Defendant's arguments regarding the risk of outbreak at NSDC are non-specific to him and are speculative at best. Further, Defendant's generalized arguments about risk apply equally to every detainee at NSDC. Additionally, Defendant has failed to demonstrate that his proposed release plan would alleviate his overall COVID-19 risks. The Court further finds that Defendant's proposed release plan would place Pretrial Services officers at risk in supervising him and, when the temporary release inevitably ends, other law enforcement officers and the facility would be placed at risk in re-apprehending Defendant after he has had ample opportunity for contamination. Therefore, Defendant has failed to demonstrate a compelling reason that temporary release is necessary.

Accordingly, Defendant's emergency motion for temporary release under 18 U.S.C. 3142(i) due to COVID-19 pandemic is **DENIED**. Docket No. 51.

**IT IS SO ORDERED.**

**DATED**: April 2, 2020.

_____
NANCY J. KOPPE
UNITED STATES MAGISTRATE JUDGE